# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>DAVID NIEMAN,<br><br>        Defendant. | No. CR06-3021-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO DISMISS AND MOTION TO SUPPRESS** |

_____

On August 31, 2006, the defendant David Nieman filed a motion to dismiss (Doc. No. 16) and a motion to suppress evidence (Doc. No. 17). In an Indictment filed June 7, 2006, Nieman is charged in one count with possession of 50 grams or more of methamphetamine with intent to distribute, and in a second count with being an unlawful user of controlled substances in possession of a firearm. (*See* Doc. No. 1) The Government has resisted both of Nieman's motions. (*See* Doc. Nos. 20 & 21). The trial management order (Doc. No. 8) assigned these motions to the undersigned for review and the filing of a report and recommended disposition. Accordingly, on October 2, 2006, the court held a hearing on the motions at which Assistant U.S. Attorney C.J. Williams appeared on behalf of the plaintiff (the "Government"), and Nieman appeared in person with his attorney, Charles L. Hawkins.

The Government offered the testimony of John Phillip Graham, a special agent with the Iowa Division of Narcotics Enforcement ("DNE"). The following three exhibits were admitted into evidence: **Gov't Ex. 1** - a search warrant, application for search warrant, and related documents, for search of Nieman's residence in Forest City, Iowa; a 1996 Oldsmobile; and Nieman's person; **Gov't Ex. 2** - a search warrant, application for search warrant, and related documents, for a search of several vehicles and other personal

property located on Nieman's property; and **Gov't Ex. 3** - a Proffer Agreement and Cooperation Agreement between Jill Marie Siems and the State of Iowa, dated April 10, 2006.

The motions are now fully submitted, and the court undertakes consideration of the motions as directed by Chief Judge Mark W. Bennett in the trial management order.

## *I. BACKGROUND FACTS*

In early April 2006, Agent Graham and another DNE agent, Toby Schissel, began working with Jill Marie Siems pursuant to the terms of a Cooperation Agreement entered into between Siems and the Cerro Gordo County Attorney's office. (*See* Gov't Ex. 3) Nieman was one of several targets being investigated by law enforcement in connection with illegal drug activities, and in exchange for Siems's cooperation, she agreed to assist officers in gathering evidence to prosecute Nieman and three other individuals. (*Id.*) More specifically, Siems informed officers that she and Nieman had a history of using drugs together, and she had bought drugs from him. In addition, she knew Nieman wanted to have sex with her, and she believed she could trade on Nieman's sexual interest in her and their past drug relationship to induce Nieman to sell her drugs.

Siems's cooperation agreement specified that she was not to use drugs or do anything illegal, and she was not to have any contact with targets unless an officer was present or she was given permission to do so. The agreement further provided that if Siems broke any of the rules set forth in the agreement, the agreement would be terminated. (*Id.*) In addition, Agent Graham testified that before each of Siems's attempted buys from law enforcement targets, they would advise her orally of what she could and could not do, including that she was not to use drugs with the target.

Siems attempted two controlled buys of drugs from Nieman in April 2006, but she was unsuccessful in buying drugs on either occasion. Nieman knew Siems had some

pending criminal charges, and when he refused to sell her any drugs, he expressed concern for her financial and physical well-being. Agent Gallagher testified drug dealers often are reluctant to sell drugs to people who have pending criminal charges against them.

Siems made a third attempt to buy drugs from Nieman, on May 3, 2006. At that time, she used drugs with Nieman, and he also gave her some drugs to take with her. As on the first two occasions, Siems's contact with Nieman on May 3rd was recorded. Officers could tell from the recording that Siems had used drugs with Nieman. When officers confronted her about this violation of the rules of her cooperation agreement, Siems indicated using drugs with Nieman was part of their history together, and she felt she had to use drugs with him in order for him to sell drugs to her. She also indicated she thought it was acceptable to the officers that she use drugs with Nieman.[1] Agents Gallagher and Schissel discussed Siems's infraction, but they decided not to terminate her cooperation agreement. They gave Siems explicit instructions that she was not to use drugs with Nieman.[2]

At about 1:00 a.m. on May 13, 2006, Siems again contacted Nieman for the purpose of arranging to buy some drugs. She went to Nieman's house and purchased an "eightball" of methamphetamine from him for $350.00. When Siems met with officers after the buy, she stated, "I finally got him to take the money."

Using this information, as well as other contacts between Siems and Nieman, and information provided by other cooperating witnesses, officers applied for a search warrant

---

[1] Agent Gallagher testified drug dealers often are reluctant to sell to people who will not use drugs with them because they know law enforcement officers and their informants are not permitted to use drugs.

[2] The officers also knew that at some point, Siems had been sleeping with another law enforcement target. Agent Gallagher stated that although this was not a violation of Siems's cooperation agreement, it would have been a violation of DEA Task Force policies. However, he further testified the Iowa DNE has not adopted all of the DEA Task Force policies and procedures. Agent Gallagher assumed Siems's handler, Agent Schissel, would have told Siems not to sleep with targets, but he had no personal knowledge as to whether this actually occurred.

3

for Nieman's person, his residence, and a 1996 Oldsmobile. (*See* Gov't Ex. 1) The warrant was issued on May 14, 2006, and on May 15, 2006, officers executed the search warrant. While they were searching, the officers located certain items, not included in the scope of the first search warrant, that they believed should be searched and possibly seized. The officers therefore applied for a second warrant for those items. (*See* Gov't Ex. 2)

In Nieman's motion to dismiss (Doc. No. 16), he argues Siems was working as a government agent during her attempts to purchase drugs from him. He claims Siems knew of his sexual interest in her, and it was only after Siems used drugs with him on May 3rd that he finally agreed to sell her some drugs. Nieman argues Siems's actions constituted outrageous Government misconduct, warranting dismissal of the Indictment.

In his motion to suppress evidence, Siems argues the search warrants were defective for several reasons:

    a.  The search warrant, No. SWSW000109, executed on May 15, 2006 at Mr. Nieman's residence was a general warrant and therefore violated the Fourth Amendment [*see* Gov't Ex. 1];

    b.  The search warrants were issued without probable cause and in violation of the Fourth Amendment;

    c.  The search warrants were based on stale information;

    d.  [Siems] engaged in outrageous governmental misconduct when she used methamphetamine with [Nieman] in order to induce him to provide her with drugs;

    e.  Search warrant SWSW000110 is based upon conclusory statements of affiant [Agent Graham] and was issued without probable cause to believe the items seized were the fruits of or instrumentalities of drug dealing.

    f.  The good faith exception will not support admission of the evidence.

(Doc. No. 17).

4

These are the issues the court must consider.

## II. DISCUSSION

### A. Motion to Dismiss

Only the most outrageous governmental misconduct would warrant dismissal of this case, and even then only if Nieman could show a violation of due process had occurred. *See United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). *See also United States v. Capelton*, 350 F.3d 231, 243 n.5 (1st Cir. 2003) (noting the "outrageous government conduct doctrine is moribund," and is rejected by the courts regularly). The conduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (internal citation omitted). The outrageous conduct does not violate due process unless it is "attributable to and directed by the government." *Barrera-Moreno*, 951 F.2d at 1092.

In this case, Siems's use of drugs with Nieman was not directed by the Government. Siems was given oral and written instructions that she was not to use drugs with a target. Nieman places emphasis on the fact that the Government did not terminate Siems's cooperation agreement when she violated the rules, apparently implying Siems's actions were directed by the Government. The court does not agree. Nieman has failed to show the existence of outrageous governmental conduct that would warrant dismissal of this action.

### B. Motion to Suppress

#### 1. General warrant argument

Nieman argues the first search warrant (Gov't Ex. 1) was a "general warrant" that failed to describe with sufficient particularity the area to be searched and the persons or things to be seized. He claims the description in the warrant was overly broad and, except for its mention of methamphetamine, used "simply catch-all phrases or descriptions" which

placed "no limits on the category of records, documents, papers, notes or photographs to be seized." (Doc. No. 17, pp. 2-3) Contrary to Nieman's assertion, the search warrant limits the types of property to be seized to that which related to "the illegal possession, use, possession with intent to deliver, or delivery of controlled substances." (Gov't Ex. 1, Search Warrant) The only property not so limited is identified as "Any and all firearms and ammunition." (*Id.*) As noted by the Government (*see* Doc. No. 20, pp. 7-8), the affidavit in support of the warrant application indicates Nieman is an unlawful user of controlled substances, prohibiting him from lawfully possessing firearms or ammunition. The court finds the warrant described the items to be seized with sufficient particularity to meet the requirements of the Fourth Amendment. *See United States v. Hudspeth*, 459 F.3d 922, 926-27 (8th Cir. 2006) ("[T]he requirement that a search warrant describe its objects with particularity is a standard of 'practical accuracy' rather than a hypertechnical one." Internal quotation marks, citations omitted).

## 2. *Probable cause*

Nieman argues the search warrant was not supported by probable cause. He asserts the supporting affidavit relies on conclusory statements of unidentified individuals whose credibility and basis of knowledge are not established in the affidavit. The court finds no merit to the defendant's argument. Here, the warrant affidavit included a lengthy explanation by Agent Graham of how drug trafficking operations are conducted, the various items required to conduct the operations, use of the proceeds, and record-keeping activities. As to each of the confidential informants, Agent Graham attached an Informant's Attachment in which he gave the history of the informant's cooperation with law enforcement and the informant's maturity, employment, and other information.

The United States Supreme Court has set the standard for review of a search warrant application, as follows:

[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Spinelli [v. United States,]* 309 U.S. [410,] 419, 89 S. Ct. [1509,] 590[, 21 L. Ed. 2d 637 (1969)]. "A grudging or negative attitude by reviewing courts toward warrants," *[United States v.] Ventresca*, 380 U.S. [102,] 108, 85 S. Ct. [741,] 745, [13 L. Ed. 2d 684 (1965)], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant [and] "courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.*, [380 U.S.] at 109, 85 S. Ct. at 746.

. . . . Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a "substantial basis for . . . conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736, 4 L. Ed. 2d 697 (1960). *See United States v. Harris*, 403 U.S. 573, 577-583, 91 S. Ct. 2075, 2079-2082, 29 L. Ed. 2d 723 (1971). [FN10]

> [FN10] We also have said that "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants," *Ventresca*, *supra*, 380 U.S. at 109, 85 S. Ct. at 746. This reflects both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case.

7

*Illinois v. Gates*, 462 U.S. 213, 236-37 & n.10, 103 S. Ct. 2317, 2331 & n.10, 76 L. Ed. 2d 527 (1983).

Thus, the scope of this court's review of the search warrant in this case is limited to a determination of whether the magistrate had a "substantial basis" to conclude a search would uncover evidence of wrongdoing. In conducting this review, the court is mindful that

> affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law have no proper place in this area." *Ventresca, supra*, 380 U.S. at 108, 85 S. Ct. at 745. . . . [M]any warrants are – quite properly . . . issued on the basis of nontechnical, common-sense judgment of laymen applying a standard less demanding than those used in more formal legal proceedings.

*Gates*, 462 U.S. at 235-36, 103 S. Ct. at 2331. As the Supreme Court further explained:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Jones v. United States,* 362 U.S. [257,] 271, 80 S. Ct. [725,] 736[, 4 L. Ed. 2d 697 (1960)]. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does [the prior legal standard].

*Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332. *See also United States v. Fulgham*, 143 F.3d 399, 400-01 (8th Cir. 1998) ("When we review the sufficiency of an affidavit supporting a search warrant, great deference is accorded the issuing judicial officer. *See United States v. Day*, 949 F.2d 973, 977 (8th Cir. 1991).").

Given all the circumstances set forth in Agent Graham's affidavit, the court finds ample probable cause existed to issue the search warrant.

### 3. *Stale information*

Nieman argues the search warrant application was based on stale information. The warrant application contradicts this assertion. It contains information over a period of several years during which Nieman allegedly was involved in drug trafficking activities. The most recent information included Siems's drug-related activities involving Nieman that occurred just days before officers applied for the search warrant. The court finds the information was sufficiently fresh to support the magistrate's probable cause determination. *See, e.g.*, *United States v. Stevens*, 439 F.3d 938, 988 (8th Cir. 2006).

### 4. *Outrageous governmental misconduct*

Nieman asserts Siems "engaged in outrageous governmental misconduct when she used methamphetamine with [him] in order to induce him to provide her with drugs." (Doc. No. 17, p. 2) The court discussed this allegation above, in connection with Nieman's motion to dismiss. As noted above, Siems's actions did not constitute a violation of Nieman's constitutional rights, nor was her conduct directed by the Government.

### 5. *Second search warrant*

Nieman makes the same arguments with respect to the second search warrant (Gov't Ex. 2) that he asserted as to the first warrant; i.e., that the warrant was based on conclusory statements and lacked probable cause. For the same reasons discussed above, the court disagrees. Furthermore, the court finds it commendable that the officers took the extra step of obtaining the second warrant, at least as to the vehicles listed therein, when

the first warrant included within its scope "[a]ny and all vehicles" located at Nieman's property. (*See* Gov't Ex. 1)

### 6. *Good faith exception*

Nieman argues the good faith exception of *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), will not support admission of the illegally-seized evidence because the magistrate abandoned his neutral and detached function in signing a general, overly-broad warrant. (*See* Doc. No. 17, pp. 8-9) Because the court has found the warrants were supported by probable cause and were without defect, the *Leon* analysis is moot.

### III.  CONCLUSION

For the reasons discussed above, the undersigned respectfully recommends Nieman's motion to dismiss and motion to suppress both be denied. Objections must be filed by **October 12, 2006**. Responses to objections, if any, must be filed by **October 17, 2006**.

IMPORTANT NOTE: Any party planning to lodge any objection to this Report and Recommendation must order a transcript of the hearing promptly, but not later than **October 9, 2006**, **regardless of whether the party believes a transcript is necessary to argue the objection**. If an attorney files an objection to this report and recommendation

without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 5th day of October, 2006.

_____
PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT