# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> DAVID NIEMAN, <br><br> Defendant. | No. CR06-3021-MWB <br><br> **ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO DISMISS AND MOTION TO SUPPRESS** |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *A. Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *B. Government's Objections To Findings Of Fact* . . . . . . . . . . . . . . . 7
      *1. Reference to Agent Gallagher* . . . . . . . . . . . . . . . . . . . . 7
      *2. Siems's violation* . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      *3. Siems's sleeping with investigation target* . . . . . . . . . . . . 8
   *C. Defendant's Objections To Findings Of Fact* . . . . . . . . . . . . . . . . 9
      *1. Siems's sexual relations with target Gallagher* . . . . . . . . . . 9
      *2. Siems's cooperation agreement* . . . . . . . . . . . . . . . . . . 9
      *3. Siems's violations of her cooperation agreement* . . . . . . . . 10
      *4. Termination of cooperation agreement* . . . . . . . . . . . . . . 10
   *D. Defendant's Objections To Conclusions Of Law* . . . . . . . . . . . . . . 11
      *1. Motion to dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      *2. Motion to suppress* . . . . . . . . . . . . . . . . . . . . . . . . . 13

*III. CONCLUSION* .................................... 14

# I. INTRODUCTION AND BACKGROUND

## A. Procedural Background

On June 7, 2006, an indictment was returned against defendant David Nieman, charging him with possessing 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841 (a)(1), 841 (b)(1)(B), and possession of firearms by an unlawful user of controlled substances, in violation of 18 U.S.C. § 922(g)(3). On August 31, 2006, defendant Nieman filed a motion to dismiss (#16) and a motion to suppress (#17). In his motion to dismiss, defendant Nieman seeks dismissal of the indictment on the ground of outrageous governmental misconduct. Specifically, defendant Nieman points to the fact that a confidential informant used methamphetamine with him in order to induce him to sell her methamphetamine. In his motion to suppress evidence, defendant Nieman seeks to suppress evidence seized following a search of his residence pursuant to two search warrants. With respect to his motion to suppress, defendant Nieman asserts the following six grounds for relief: first, that the items to be seized were not described with sufficient particularity; second, that the first search warrant was not supported by probable cause; third, that the second search warrant lacked probable cause; fourth, that the government engaged in outrageous misconduct which warrants

suppression of the evidence in this case; fifth, that the search warrants were based on stale information; and, sixth, that the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984) is inapplicable and that suppression is the appropriate remedy in this case.

Defendant Nieman's motion to dismiss and motion to suppress were referred to United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b), for the purpose of holding an evidentiary hearing and preparing a Report and Recommendation on the motions. On October 2, 2006, an evidentiary hearing was held regarding defendant Nieman's motions. On October 5, 2006, Judge Zoss filed a Report and Recommendation in which he recommends that defendant Nieman's motions to dismiss and suppress both be denied. With respect to defendant Nieman's motion to dismiss, Judge Zoss concludes that defendant Nieman has failed to show the existence of outrageous governmental conduct that would warrant dismissal of this case. With respect to the motion to suppress, Judge Zoss finds that both of the search warrants described the items to be seized with sufficient particularity to meet the requirements of the Fourth Amendment. Judge Zoss further concludes that both of the search warrants were supported by probable cause and not based on stale information. Judge Zoss also finds that defendant Nieman has failed to show the existence of outrageous governmental conduct that would warrant suppression of the evidence in this case. Finally, Judge Zoss concludes that because the warrants were supported by probable cause and were without defect, whether the *Leon* good faith exception was applicable in this case was moot. After obtaining extensions of time, defendant Nieman filed objections to Judge Zoss's Report and Recommendation. The government also filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Nieman's motion to dismiss and motion to suppress.

## B. *Factual Background*

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> In early April 2006, Agent Graham and another DNE agent, Toby Schissel, began working with Jill Marie Siems pursuant to the terms of a Cooperation Agreement entered into between Siems and the Cerro Gordo County Attorney's office. (*See* Gov't Ex. 3) Nieman was one of several targets being investigated by law enforcement in connection with illegal drug activities, and in exchange for Siems's cooperation, she agreed to assist officers in gathering evidence to prosecute Nieman and three other individuals. (*Id.*) More specifically, Siems informed officers that she and Nieman had a history of using drugs together, and she had bought drugs from him. In addition, she knew Nieman wanted to have sex with her, and she believed she could trade on Nieman's sexual interest in her and their past drug relationship to induce Nieman to sell her drugs.
>
> Siems's cooperation agreement specified that she was not to use drugs or do anything illegal, and she was not to have any contact with targets unless an officer was present or she was given permission to do so. The agreement further provided that if Siems broke any of the rules set forth in the agreement, the agreement would be terminated. (*Id.*) In addition, Agent Graham testified that before each of Siems's attempted buys from law enforcement targets, they would advise her orally of what she could and could not do, including that she was not to use drugs with the target.
>
> Siems attempted two controlled buys of drugs from Nieman in April 2006, but she was unsuccessful in buying drugs on either occasion. Nieman knew Siems had some pending criminal charges, and when he refused to sell her any drugs, he expressed concern for her financial and physical well-being. Agent Gallagher testified drug dealers often are reluctant to sell drugs to people who have pending criminal charges against them.
>
> Siems made a third attempt to buy drugs from Nieman,

on May 3, 2006. At that time, she used drugs with Nieman, and he also gave her some drugs to take with her. As on the first two occasions, Siems's contact with Nieman on May 3rd was recorded. Officers could tell from the recording that Siems had used drugs with Nieman. When officers confronted her about this violation of the rules of her cooperation agreement, Siems indicated using drugs with Nieman was part of their history together, and she felt she had to use drugs with him in order for him to sell drugs to her. She also indicated she thought it was acceptable to the officers that she use drugs with Nieman.[1] Agents Gallagher and Schissel discussed Siems's infraction, but they decided not to terminate her cooperation agreement. They gave Siems explicit instructions that she was not to use drugs with Nieman.[2]

At about 1:00 a.m. on May 13, 2006, Siems again contacted Nieman for the purpose of arranging to buy some drugs. She went to Nieman's house and purchased an "eightball" of methamphetamine from him for $350.00. When Siems met with officers after the buy, she stated, "I finally got him to take the money."

Using this information, as well as other contacts between Siems and Nieman, and information provided by other cooperating witnesses, officers applied for a search warrant for Nieman's person, his residence, and a 1996 Oldsmobile. (*See* Gov't Ex. 1) The warrant was issued on May 14, 2006, and

---

[1] Agent Gallagher testified drug dealers often are reluctant to sell to people who will not use drugs with them because they know law enforcement officers and their informants are not permitted to use drugs.

[2] The officers also knew that at some point, Siems had been sleeping with another law enforcement target. Agent Gallagher stated that although this was not a violation of Siems's cooperation agreement, it would have been a violation of DEA Task Force policies. However, he further testified the Iowa DNE has not adopted all of the DEA Task Force policies and procedures. Agent Gallagher assumed Siems's handler, Agent Schissel, would have told Siems not to sleep with targets, but he had no personal knowledge as to whether this actually occurred.

>on May 15, 2006, officers executed the search warrant. While they were searching, the officers located certain items, not included in the scope of the first search warrant, that they believed should be searched and possibly seized. The officers therefore applied for a second warrant for those items. (*See* Gov't Ex. 2)

Report and Recommendation at 2-4. Upon review of the record, the court adopts all of Judge Zoss's factual findings that have not been objected to by the parties.

## II. LEGAL ANALYSIS

### A. Standard Of Review

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*). As noted above, both parties have filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Nieman's motion to dismiss and motion to suppress.

### B. Government's Objections To Findings Of Fact

#### 1. Reference to Agent Gallagher

The government initially objects to Judge Zoss's reference on page three of his Report and Recommendation to Agent Gallagher. The government asserts that there is no Agent Gallagher involved in this case and that the references to Agent Gallagher appear to be a typographical error which should refer to Special Agent Graham. From the court's review of the record in this case, the government's objection is well founded since no mention of a Agent Gallagher can be located.[3] Therefore, this objection is sustained.

---

[3] The court notes that a Ryan Gallagher is mentioned in Siems's cooperation agreement as one of four individuals she was to gather evidence against. There is no indication in the record, however, that this Ryan Gallagher is a member of law enforcement.

7

### 2. *Siems's violation*

The government next objects to the factual findings that the officers could tell from the recording that Siems had used drugs with Nieman and that Siems was confronted by the officers about this violation of the rules of her cooperation agreement. The government argues that the recording device worn by Siems did not permit it to transmit to the officers so that they did not know of Siems's drug use with Nieman until immediately after the meeting when Siems self-reported her drug use to the officers. Again, from the court's review of the transcript in this case, it is clear that the government's position is correct. Agent Graham indicated during his testimony at the suppression hearing that Siems self-reported her drug use with Nieman almost immediately after the transaction had occurred. Tr. at 18. Moreover, Agent Graham indicated that the recording device worn by Siems did not transmit out to the officers. Tr. at 22. Therefore, this objection is also sustained.

### 3. *Siems's sleeping with investigation target*

Finally, the government objects to Judge Zoss's finding that: "The officers also knew that at some point, Siems had been sleeping with another law enforcement target." Report and Recommendation at 3 n.2. The government argues that Siems had slept with the target years previously, and not while working as a confidential informant. The problem the court has in addressing this objection is that the court is not sure which law enforcement target Judge Zoss is referring to in his Report and Recommendation. The record reveals that Siems had sexual relations with one of her targets, Ryan Gallagher, after she signed her cooperation agreement on April 10, 2006. Thus, to the extent that Judge Zoss was referring to Siems's sexual relationship with Gallagher in his Report and Recommendation, the government's objection would be overruled. The record, however, also reveals that Siems had a past sexual relationship with another law enforcement target,

Shawn Zimmerman. The record does not disclose that Siems rekindled her sexual relationship with Zimmerman during the course of her working as a confidential informant. Thus, to the extent that Judge Zoss was referring to Siems's sexual relationship with Zimmerman in his Report and Recommendation, the government's objection is sustained but such objection is overruled if in reference to target Gallagher.

### C. *Defendant's Objections To Findings Of Fact*
#### 1. *Siems's sexual relations with target Gallagher*

Defendant Nieman initially objects to Judge Zoss not including in his factual statement the factual finding that Siems had sexual relations with target Ryan Gallagher between April 10, 2006, and May 3, 2006, while she was cooperating with law enforcement officers pursuant to a cooperation agreement. As the court noted above, Judge Zoss's report and recommendation does mention the fact that Siems "had been sleeping with another law enforcement target." Report and Recommendation at 3 n.2. The Report and Recommendation , however, does not mention by name who the target is that Siems had sex with during the course of her cooperation agreement. As noted above, the record reveals that Siems had sexual relations with Ryan Gallagher, after she signed her cooperation agreement on April 10, 2006, and before May 3, 2006. Tr. at 33. Therefore, this objection is sustained.

#### 2. *Siems's cooperation agreement*

Defendant Nieman also objects to Judge Zoss not including in his factual findings the fact that Siems's cooperation agreement called for Siems to assist law enforcement officers in gathering evidence against four targets: David Nieman, Ryan Gallagher, Shawn Zimmerman, and Jason Garcia. Judge Zoss clearly mentioned that Siems agreed to assist "in gathering evidence to prosecute Nieman and three others." Report and

Recommendation at 2. Judge Zoss, however, did not specifically mention the names of the three other targets. Therefore, this objection is sustained in part and overruled in part.

### 3. *Siems's violations of her cooperation agreement*

Defendant Nieman next objects to Judge Zoss not including in his factual findings that Siems's actions of using drugs and engaging in sex with investigation targets were violations of her cooperation agreement. Siems's cooperation agreement specifically prohibits her from using drugs. That cooperation agreement, however, does not contain a specific prohibition on Siems's engaging in sexual relations with targets of the investigation. The court notes that Agent Graham stated that such conduct would violate Drug Enforcement Agency policies. Tr. at 29. Agent Graham went on to state that he was not sure if Siems had been orally advised that she could not engage in sexual relations with targets. Tr. at 30. Therefore, this objection is sustained in part and overruled in part.

### 4. *Termination of cooperation agreement*

Defendant Nieman next objects to Judge Zoss not including in his factual findings that Siems's violation of her cooperation agreement would result in termination of the agreement. The cooperation agreement states: "Any rules broken—will terminate agreements." Gov't Ex. 3 at 6. The court does not construe this provision to irrevocably terminate the agreement upon any violation of it by Siems. Rather, the provision permits law enforcement the discretion to terminate it. Judge Zoss noted this in his Report and Recommendation. Report and Recommendation at 2. Siems violated the terms of her cooperation agreement when she did drugs with defendant Nieman. As a result of this violation, Agents Graham and Schissel discussed it, but decided not to terminate her cooperation agreement. Instead, they gave Siems explicit instructions that she was not to use drugs with Nieman. Law enforcement authorities clearly had the discretion whether

to enforce the termination provision in Siems's cooperation agreement but opted to give Siems a second chance. Therefore, this objection is overruled.

### D. *Defendant's Objections To Conclusions Of Law*

#### 1. *Motion to dismiss*

Defendant Nieman objects to the conclusion reached by Judge Zoss with respect to his Motion To Dismiss. Specifically, defendant Nieman asserts that when the government condoned Siems' drug use in the course of her cooperation with government authorities in order to facilitate Nieman's subsequent sale of drugs to her, such conduct was "so excessive, flagrant, scandalous, intolerable and offensive that it violates due process." Defendant's Objections at 3.

The court notes that the premise underlying defendant Nieman's objection, that the government condoned Siems's conduct, is incorrect. Siems's cooperation agreement specifically prohibited her from engaging in such conduct. Moreover, when Siems self-reported this violation to her handlers, they discussed termination of her cooperation agreement. Although Siems's handlers gave her a second chance, they gave her explicit instructions that she was not to use drugs with Nieman. Thus, the issue raised by defendant Nieman's Motion To Dismiss is whether a government informant's single unauthorized use of drugs with an investigation target in violation of her cooperation agreement and failure to terminate such agreement on that basis constitutes governmental misconduct that is "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431-32 (1973).

Although courts have recognized that there may be circumstances in which the conduct of government agents is so outrageous that due process bars the government from

11

invoking the judicial process to obtain a conviction, *see Russell*, 411 U.S. at 431- 32, "'[t]he level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court.'" *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003) (quoting *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993); *see also United States v. Nguyen*, 250 F.3d 643, 646 (8th Cir. 2001) (noting that outrageous government conduct defense requires a showing of government misconduct that shocks the conscience of the court).[4] The Eighth Circuit Court of appeals has cautioned that this defense is reserved for conduct that falls "within that narrow band of 'the most intolerable government conduct.'" *King*, 351 F.3d at 867 (quoting *Pardue*, 983 F.2d at 847 (in turn quoting *United States v. Musslyn*, 865 F.2d 945, 947 (8th Cir. 1989) (additional quotation marks omitted)). Indeed, the Eighth Circuit Court of Appeals has yet to see a case in which the government's conduct rose to the level of such outrageousness.

Upon review of the record, the court concurs in the well-reasoned analysis of Judge Zoss and finds no evidence of conscience-shocking behavior on the part of the government. The court recognizes that the use of unsavory informants is quite often the nature of the beast in police investigations. Here, the confidential informant, Siems, unilaterally, and without prior approval of her handlers, decided to take drugs with Nieman. This conduct was in violation of her cooperation agreement. After Siems self-reported this violation to her handlers, they discussed terminating her cooperation agreement but instead gave her a second chance. However, they gave her explicit instructions that she was not to use drugs

---

[4]The court notes that the defense of outrageous governmental misconduct focuses on the government's conduct, while the defense of entrapment focuses on the defendant's predisposition to commit a crime. *See United States v. Berg*, 178 F.3d 976, 979(8th Cir. 1999).

with Nieman again and she followed these instructions. Thus, the court concludes that the conduct of the government in this case was not so outrageous as to violate defendant Nieman's constitutional rights. The court notes that defendant Nieman has not directed the court's attention to any legal precedent in which a court has found actions similar to those involved in this case to rise to such a level of outrageousness as to require dismissal on constitutional grounds. Therefore, this objection to Judge Zoss's Report and Recommendation is overruled and defendant Nieman's Motion To Dismiss is denied.

### 2. *Motion to suppress*

Defendant Nieman also objects to all of the conclusions reached by Judge Zoss with respect to defendant Nieman's Motion To Suppress. Defendant Nieman, however, does not make any specific objections with respect to that portion of Judge Zoss's Report and Recommendation. As noted above, Judge Zoss found that both of the search warrants at issue in this case described the items to be seized with sufficient particularity to meet the requirements of the Fourth Amendment. Judge Zoss further concluded that both of the search warrants were supported by probable cause and not based on stale information. Judge Zoss also found that defendant Nieman had failed to show the existence of outrageous governmental conduct that would warrant suppression of the evidence in this case. Finally, Judge Zoss concluded that because the warrants were supported by probable cause and were without defect, application of the *Leon* good faith exception in this case was a moot issue. Upon *de novo* review of the record of Judge Zoss's findings and conclusions, the court finds that there is no ground to reject or modify them. Therefore, the court overrules defendant Nieman's objection and denies defendant Nieman's Motion To Suppress.

### *III. CONCLUSION*

Therefore, for the reasons set out above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **denies** defendant Nieman's Motion To Dismiss and Motion To Suppress.

**IT IS SO ORDERED.**

**DATED** this 17th day of November, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA